UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14CV-00075-HBB

**MICHAEL G. CERVETTO**                                                                              **PLAINTIFF**

**VS.**

**MARK J. POWELL and**
**TRANSERVICE LOGISTICS INC.**                                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This case arises out of a commercial motor vehicle accident involving Plaintiff Michael Cervetto ("Cervetto") and Defendant Mark Powell ("Powell") on June 24, 2013. Defendants Powell and Transervice Logistics Inc. ("Transervice") have filed a motion for summary judgment (DN 44). Cervetto filed a response (DN 47), and Defendants replied (DN 49). Cervetto has also filed a motion for summary judgment (DN 48), to which Defendants responded (DN 50), and Cervetto replied (DN 51). These matters are ripe for determination.

### I. STATEMENT OF FACTS

In late June of 2013, both Cervetto and Powell were operating commercial motor vehicles on Interstate 65 North in Edmonson County, Kentucky. Powell was employed by Transervice at the time. While Cervetto was passing Powell using the left hand lane, Powell suffered from a blackout. Powell lost control of his semi-truck and veered into Cervetto's lane, making contact with Cervetto's truck, and sending both trucks into the concrete barrier near the median of the

highway. Cervetto was transported by EMS to the emergency room at Caverna Memorial Hospital, where he was treated for a sprained wrist and bruising to his thigh.

Cervetto filed this lawsuit on June 19, 2014, alleging negligence against Powell and negligent entrustment against Transervice (DN 1, at p. 2-4). Cervetto seeks damages for medical expenses, potential lost income due to a lower compliance, safety, accountability ("CSA") score, and punitive damages (DN 44-7, at p. 4, DN 1, at p. 4).

Discovery in this case has been contentious. This Court entered its original scheduling order for the case on September 29, 2014 (DN 18). The order established discovery deadlines, including an initial disclosure deadline of October 14, 2014, and an expert witness testimony deadline of July 31, 2015 (Id.). Cervetto failed to meet the initial disclosure deadline. This Court then ordered Cervetto to provide his initial disclosures to Defendants by December 1, 2014 (DN 20). Cervetto again failed to meet the Court's deadline. Eventually, Cervetto propounded initial disclosures to Defendants on July 12, 2015, nine months after the original deadline (DN 44-5). Defendants feel these late disclosures are deficient (DN 44-1, at p. 4).

Cervetto also failed to meet the expert witness testimony deadline. He did not provide the names of any expert witnesses in his discovery responses (DN 44-7, at p. 7) or any expert reports. Confusingly, the only reference Cervetto makes to an expert witness is in an e-mail exchange with Defendants, where he states that he will "seek to use Dr. Corwin" as an expert witness (DN 44-8). As Defendants point out, Dr. Corwin is a retained expert by the defense that has never evaluated Cervetto (DN 44-1, at p. 5). Cervetto does not mention Dr. Corwin in his response to Defendants' summary judgment motion and also does not request to supplement his discovery responses to list any expert witnesses.

## II. STANDARD OF REVIEW

When considering the issue of summary judgment, "a federal court applies the standards of Fed.R.Civ.P. 56" rather than Kentucky's summary judgment standard. Blair v. GEICO Gen. Ins. Co., 917 F.Supp.2d 647, 651-52 (E.D. Ky. 2013) (quoting Gafford v. Gen. Elec. Co., 997 F.2d 150, 165 (6th Cir. 1993)). Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In applying this standard, evidence is viewed in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Summary judgment is proper where there is not sufficient evidence in support of the nonmovant's case upon which a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The moving party bears the initial burden of "informing the district court of the basis of its motion" and "demonstrating the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This initial burden may be satisfied by showing an absence of evidence to support an essential element of the nonmoving party's case for which the nonmoving party has the burden of proof. Id. Once the moving party demonstrates this lack of evidence, the nonmoving party may only overcome summary judgment by showing that a genuine dispute exists, using specific facts that "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Where, as here, the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 223.

### III. DISCUSSION

### A. Defendants' Motion for Summary Judgment

Defendants claim that because Cervetto did not properly disclose any expert witnesses his claims fail as a matter of law (DN 44-1, at p. 6-7). Specifically, Defendants cite to Federal Rule of Civil Procedure 37(c)(1), arguing that: (1) Cervetto should be prohibited from presenting medical evidence on causation because he never identified an expert, and (2) Cervetto should be prohibited from seeking damages for his impairment of earning capacity because he failed to identify a damages expert (DN 44-1, at p. 7, 9).[1]

Federal Rule of Civil Procedure 26(a)(2) requires the parties to disclose the identities of any expert witnesses that they intend to use at trial to present evidence, and these disclosures must be accompanied by a written report, prepared and signed by the witness. In the event a party fails to make these required expert disclosures, Rule 37(c)(1) provides for sanctions, stating:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified or is harmless*.

Fed.R.Civ.P. 37(c)(1) (emphasis added). The Sixth Circuit requires "absolute compliance" with Rule 26(a), meaning that it mandates the trial court punish a party for discovery violations unless the violation was substantially justified or harmless. Roberts v. Galen of Va., Inc., 325 F.3d 776,

---

[1] Cervetto claims that Defendants' Motion for Summary Judgment should be "categorized as a motion in limine to prohibit Plaintiff Cervetto from arguing at trial he is entitled to compensatory damages and punitive damages" (DN 47, at p. 2). Blankenship v. Collier, 302 S.W.3d 665 (Ky. 2010) is instructive on this point. In Blankenship, the Supreme Court of Kentucky found that the defendant's motion for summary judgment was properly before the court for ruling because the plaintiff "failed to identify any expert witnesses, never seriously disputed that an expert would be needed[,] and had asserted medical malpractice claims which clearly required expert testimony." 302 S.W.3d at 673. Cervetto has similarly failed to identify any expert witnesses and never seriously disputed that an expert is needed for his claims. As a result, the Defendants' Motion for Summary Judgment is properly before the trial court, and it is not necessary to construe it as a motion in limine.

782 (6th Cir. 2003) (quoting Vance v. United States, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999) (additional citations omitted)).

### 1. Cervetto's Failure to Disclose Expert on Causation

Defendants argue that Rule 37 prohibits Cervetto from presenting any medical evidence as to causation because he failed to identify an expert before the deadline expired (DN 44-1, at p. 7). Cervetto responds that he should be permitted to testify as to his physical pain and suffering related to the accident and claims that Defendants have provided no credible supporting authority for prohibiting him from testifying (DN 47, at p. 2-3).

Before determining whether Rule 37 should apply, the Court must determine whether Cervetto needs an expert to satisfy his burden as to causation. It is well established that causation is a "necessary element of proof in any negligence case." Baylis v. Lourdes Hosp., Inc., 805 S.W.2d 122, 124 (Ky. 1991) (citations omitted). Kentucky law generally requires an expert or medical testimony to establish legal causation. Blair v. GEICO Gen. Ins. Co., 917 F.Supp.2d 647, 657 (E.D. Ky. 2013) (quoting Lacefield v. LG Electronics, Inc., C.A. No. 3:06-12-KKC, 2008 WL 544472, at *3 (E.D. Ky. Feb. 26, 2008)). Yet, an exception to this rule exists for "situations in which causation is so apparent that laymen with general knowledge would have no difficulty in recognizing it." Id.; Turner v. Reynolds, 559 S.W.2d 740, 741 (Ky. Ct. App. 1977) (quoting Johnson v. Vaughn, 370 S.W.2d 591, 596 (Ky. 1963)). Circumstantial evidence, therefore, may be sufficient to prove causation where the evidence reasonably establishes a causal connection between the alleged negligence and the injury. Baylis, 805 S.W.2d at 124 n.3 (quoting Johnson, 370 S.W.2d at 597).

Here, the question becomes whether the cause of Cervetto's injuries is so apparent that lay members of the jury could easily determine whether and to what extent the June 24, 2013

accident caused those injuries. See McFerrin v. Allstate Property & Cas. Co., 29 F.Supp.3d 924, 935 (E.D. Ky. 2014). Cervetto testified in his deposition that during the accident his thigh struck the bottom of the steering wheel, and he "sprung his wrist really bad from the steering wheel" (DN 44-12, at p. 50-51). After the accident, Cervetto was transported by EMS to an emergency room at Caverna Memorial Hospital for treatment (Id. at p. 60; DN 44-1, at p. 2). Cervetto produces no evidence of any pre-existing conditions or injuries prior to the accident.

Giving Cervetto's evidence the most favorable inferences, the undersigned finds the evidence reasonably establishes a probable connection between the accident and Cervetto's injuries. Because no expert testimony is necessary, the Rule 37(c) sanctions are moot as to this issue. Accordingly, Defendants' motion for summary judgment as to the causation issue is denied, and the issue should be submitted to the jury.

2. Cervetto's Failure to Disclose Expert on Damages

Defendants also claim that, under Rule 37, Cervetto should be prohibited from testifying as an expert witness as to his "future economic damages" (DN 44-1, at p. 9-11). Specifically, Defendants argue that Cervetto did not make an expert disclosure as to himself and cannot qualify as an expert on the issue of economic loss. Cervetto counters that he is qualified because he has been "an over the road truck driver for over fifteen years" and is an expert on how commercial truck driving accidents negatively affect his CSA rating (DN 47, at p. 3).

Unlike the causation issue, expert testimony as to Cervetto's future economic damages is highly technical and is not "so apparent that a layperson with general knowledge would have no difficulty recognizing it." See Burton v. Helmers, No. 2008-CA-001470-MR, 2009 WL 4021148, at *1 (Ky. Ct. App. Nov. 20, 2009) (quoting Stephens v. Denison, 150 S.W.3d 80, 82 (Ky. Ct.

6

App. 2004)). As a result, Cervetto was required under Fed.R.Civ.P. 26(a)(2)(A),(B) to make expert disclosures, including a written report prepared and signed by the expert witness.

Defendants note that it is apparent from Cervetto's initial disclosures "that he intends to rely solely on himself to provide evidence to the Court and jury that his poor CSA rating has affected his ability to earn money" (DN 44-1, at p. 11). Yet, Cervetto's initial disclosures do not indicate that he seeks to testify as an expert witness, but instead only indicate that he is an individual with discoverable information concerning "his lost income due to a poor CSA rating" (DN 44-2, at p. 4). This vague reference to his information on future income loss cannot be considered an expert disclosure. Additionally, the only occasion in which Cervetto explicitly indicated his intention to testify as an expert was in his response to Defendants' motion for summary judgment, which was filed on October 8, 2015, almost three months after the deadline for expert disclosures expired.

Undoubtedly, Cervetto has failed to comply with the requirements of Rule 26. The Court, therefore, must determine whether Cervetto's failure to provide the required expert disclosure under Rule 26 was "substantially justified or harmless." Fed.R.Civ.P. 37(c)(1). Cervetto puts forth no justification for his failure to identify an expert. As for determining if Cervetto's failure is harmless, courts within the Sixth Circuit have turned to the advisory committee note for Rule 37, which "strongly suggests" that harmlessness "involves an honest mistake on the part of a party," such as "a genuine misinterpretation or misunderstanding of a rule," coupled with sufficient knowledge on the part of the other party. Blair, 917 F.Supp.2d at 656 (quoting Sommer v. Davis, 317 F.3d 686, 692 (6th Cir. 2003)); see Dennis v. Sherman, No. 1:08-cv-1055-JDB-egb, 2010 WL 1957236, at *2 (W.D. Tenn. May 12, 2010) (An "honest mistake" is one that would not indicate bad faith or an attempt to conceal information).

7

Cervetto has not made an honest mistake. His discovery responses (DN 44-7), initial disclosures (DN 44-2), and response to Defendants' motion for summary judgment (DN 47), set forth no basis for finding that he genuinely misinterpreted Rule 26. Cervetto's blatant disregard for following the scheduling order of the case and following the discovery rules reinforces that his error cannot be considered harmless. Additionally, Cervetto waited until "the eve of trial," in his response to Defendants' summary judgment motion, to indicate he intends to testify as an expert as to damages. *See* Blair, 917 F.Supp.2d at 656 (finding that deliberate disobedience of a court's deadline is not an honest mistake, especially when the disclosure is not made until the eve of trial).

Because Cervetto cannot prove his failure to provide the required expert disclosures as to his future economic damages was substantially justified or harmless, Rule 37(c)(1) operates to exclude Cervetto's testimony as to this issue. Without expert testimony on this issue, Cervetto's claim for future economic damages fails as a matter of law, and summary judgment should be granted in favor of Defendants.

### B. Cervetto's Motion for Summary Judgment

Cervetto raises two issues in his "Motion for Summary Judgment." First, he believes that the Defendants admitted that Powell suffered from strokes prior to the accident and lied about it, which requires summary judgment be granted in his favor (DN 48, at p. 4-5). Second, he asks the Court to grant sanctions against the Defendants for their "continued violations" of Fed.R.Civ.P. 11(b) (Id.).

### 1. Cervetto's Presentation of "Undisputed Facts"

Cervetto argues the "undisputed facts" regarding Defendant Powell's strokes that have been proven through written discovery, depositions, and Defendants' omissions call for summary

judgment in his favor (DN 48, at p. 4-5). Cervetto's "undisputed facts" are summarized as follows: (1) Defendant Powell suffered strokes, (2) Defendant Powell lied on his medical questionnaire about suffering strokes, and (3) Defendant Transverse willfully violated critical Department of Transportation ("DOT") safety regulations in allowing Defendant Powell to drive a commercial vehicle while knowing he suffered from strokes (Id. at p. 4).

As Defendants note in their response, it seems Cervetto is "requesting a finding that Defendant Powell lied about the strokes he suffered in 2012" and a finding that Transervice willfully violated DOT regulations in permitting Powell to drive (DN 50, at p. 1-2). Unfortunately, Cervetto does not cite to a single document in recounting his "undisputed facts." A party cannot show that "no genuine issue of material fact" exists by merely asserting "what the facts are[,]" rather, "it must be shown by evidence." Brown v. Malicki, No. 3:08-CV-141, 2008 WL 2924080, at *2 (S.D. Ohio July 23, 2008).

As mentioned above, in a motion for summary judgment, "the non-moving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." In re Morris, 260 F.3d 654, 665 (6th Cir. 2001). Defendants here explain that although there is evidence in the record indicating that Defendant Powell was treated for stroke-like symptoms in May of 2012, there has never been an admission by Defendant Powell that he knew he suffered a stroke (DN 50, at p. 1). After carefully reviewing the record, the undersigned agrees that there is no evidence that Defendant Powell lied about knowing he suffered from a stroke in May of 2012. Further, because Defendant Powell produced "return to work" information to Transervice, there is no evidence that Transervice willfully violated any DOT regulations by allowing Defendant Powell to

continue driving. Defendants, at a minimum, have put forth evidence indicating that a genuine issue of material fact exists.

In sum, the undersigned cannot agree that Cervetto has proven no genuine issue of material fact exists as to his recitation of "undisputed facts." Cervetto's motion for summary judgment, therefore, is denied.

### 2. Cervetto's Request for Sanctions

Cervetto includes a request for sanctions in the last sentence of his summary judgment motion (DN 48, at p. 5). Defendants argue that Cervetto's request for sanctions violates Fed.R.Civ.P. 11(c)(2) and, additionally, is baseless (DN 50, at p. 3-4). Rule 11 includes a safe-harbor provision, which states:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed.R.Civ.P. 11(c)(2). Failure to comply with the safe harbor provision precludes the court from "imposing sanctions on the party's motion." Penn, LLC v. Prosper Bus. Dev. Corp., 773 F.3d 764, 767 (6th Cir. 2014) (citing Ridder v. City of Springfield, 109 F.3d 288, 297 (6th Cir. 1997)). Cervetto's request for sanctions fails to fulfill the safe harbor provisions in two respects. He not only failed to file his motion for sanctions separately from his summary judgment motion but also failed to adhere to the 21-day service requirements. Cervetto's request for sanctions, therefore, must be denied.

ORDER

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (DN 44) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is **GRANTED** as to the issue of future economic damages and **DENIED** as to the issue of causation.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (DN 48) is **DENIED**.


Copies:     Counsel